Baruch S. Gottesman, Esq.
185-12 Union Turnpike
Fresh Meadows, NY 11366
*Attorney for Plaintiff*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x

| | |
|---|---|
| **THE TEDDY BEARYS LTD**, | Civil Action No. <u>1:18-cv-03436</u> |
| Plaintiff, | |
| ~ *against* ~ | **COMPLAINT** |
| **DOVER PUBLICATIONS, INC.**; and **THEODORE MENTEN**, | **JURY TRIAL DEMANDED** |
| Defendants | |

-------------------------------------------------------------x

Comes now Plaintiff **THE TEDDY BEARYS LTD.** by and through counsel,

**BARUCH S. GOTTESMAN, ESQ.**, and for their Complaint against Defendants **DOVER**

**PUBLICATIONS, INC.** and **TED MENTEN** states as follows:

<u>**NATURE OF THE ACTION**</u>

1.      This lawsuit seeks to vindicate the Plaintiff's rights in The Teddy Beary art with

respect to copyright violations and contributory copyright violations committed by the

Defendants.

**I.      Birth of an American Classic**

2.      The Congressionally-chartered Theodore Roosevelt Association, describes the

birth of the Teddy Bear as follows:

> "It all started with a hunting trip President Roosevelt took in
> 1902 in Mississippi at the invitation of Mississippi Governor,
> Andrew H. Longino.   After three days of hunting, other
> members of the party had spotted bears, but not Roosevelt.

- 1 -

"Now what?  The President's bear hunt would be a failure!  The next day, the hunt guides tracked down an old black bear that the dogs had trailed quite a distance and attacked.  The guides tied the bear to a willow tree and called for the President.  Here was a bear for him to shoot!

"But Roosevelt took one look at the old bear and refused to shoot it.  He felt doing so would be unsportsmanlike . . . .   Word of this [incident] hit newspapers across the country, and political cartoonist Clifford Berryman picked up on the story, drawing a cartoon showing how President Roosevelt refused to shoot the bear while hunting in Mississippi."

Theodore Roosevelt Association, *Real Teddy Bear Story*.   Available at

http://tiny.cc/RealTeddyStory (last visited June 12, 12018)[1].

    3.      The incident, immortalized in cartoon form as shown below, went viral.



Illustration 1.  Berryman, Clifford, *Drawing The Line in Mississippi*, Washington Post (November 16, 1902) at 1.

---

[1] Full url is:
http://www.theodoreroosevelt.org/site/c.elKSIdOWIiJ8H/b.8684621/k.6632/Real_Teddy_Bear_Story.htm

4.       Morris Mitchom, a New York toymaker, claimed to have sought and obtained President Roosevelt's permission to create a plush bear toy memorializing the incident and bearing the President's name – Teddy Bear – which was granted.  *See* Teddy Bear, *The National Museum of American History at the Smithsonian*.   Available at http://americanhistory.si.edu/press/fact-sheets/teddy-bear (last visited June 12, 2018).  Since then, Teddy Bears – in their myriad of styles, designs, and fashions – have represented sportsmanship,    care    for    the    environment,    and    Presidential    leadership. Teddy Bears quintessentially represent childhood and are a true American classic.

## II.       The Teddy Beary: The Birth of an American Classic for the Digital Era

5.       In 1983, a young U.K. artist, Irene Patricia Scott, came up with the vision for a collection of dolls and drawn characters to be known as "The Teddy Bearys".

6.       The artist recalls sitting cross-legged on the floor at her home in the U.K. where she used a black biro pen on scented, cream-colored, A4 size drawing paper to sketch ideas for "The Teddy Beary".  The artist recalls that having not yet learned to draw paws well, she authored the final draft of The Teddy Beary with its paws obscured.  Consistent with the artistic tradition, the sketching was branded with the artist's monogram cleverly integrated into the sketch.

7.       No Teddy Bear art is the same.  "Whether . . . [a] bear will be a hit depends on what teddy aficionados call 'character.'  'A lot of people jumped on the bandwagon and decided to make a bear because they were selling . . . .  That's not how it works.  You produce a wonderful bear, then people fall in love with it.   Otherwise, it's just another bear."  Dolan, Barbara, *Bears: They're in a Bull Market*, Chicago Tribune (November 23, 1986) Tempo Section, Page 5 (*quoting* Defendant Theodore Menten).

8.     The Teddy Bear that Ms. Scott author had that indefinable "character". As seen below, its' appeal was obvious and deeply charismatic.



Illustration 2.  Copy of the original Teddy Beary as authored by Ms. Scott.

9.     The Teddy Beary that Ms. Scott authored has become the iconic Teddy Bear of the digital era.  It appears on clipart sites, has been incorporated into fonts, and is consistently the most popular Teddy Bear art when searched online.

10.     On June 14, 2015, Ms. Scott became aware that her artwork was available online.  On October 21, 2015, Ms. Scott became aware of Defendants exploitation of The Teddy Beary and Plaintiff now brings this action to enjoin Defendants from continuing violations of its copyrights and for statutory and other damages arising from these violations.

## THE PARTIES

### I.      Plaintiff

11.      Plaintiff **THE TEDDY BEARYS LTD** is a Private Limited Company incorporated and existing under the U.K. Companies Act of 2006.  Its' primary offices are located at 19 Rose Gardens, Herne Bay, in the County of Kent, England in the United Kingdom.

12.      A true and accurate copy of the Certificate of Incorporation of The Teddybearys Limited as a Private Limited Company given at the United Kingdom's Companies House on September 25, 2017, and registered under Company No. 10980277, is annexed hereto as **Exhibit A** and made a part of this Complaint.

13.      A true and accurate copy of the Certificate of Incorporation on Change of Name of The Teddy Bearys Ltd. given at the United Kingdom's Companies house on October 13, 2017, is annexed hereto as **Exhibit B** and made a part of this Complaint.

14.      The Teddy Bearys Ltd.'s Sole Director is the artist Ms. Irene Patricia Scott.

### II.      Defendants

15.      Upon information and belief, **DOVER PUBLICATIONS, INC.** is a business corporation organized and existing under New York law.  It maintains its principal offices at 31 East 2nd Street, Mineola in the County of Nassau in the State of New York.  The basis of information and belief includes, but is not limited to, the Entity information available on the website of the Division of Corporations of the Department of State of the State of New York, a printout of which is annexed hereto as **Exhibit C** and made a part of this Complaint.  In this Complaint, Dover Publications, Inc. is sometimes referred to as "**DOVER**".

16.     Upon information and belief, Defendant **THEODORE MENTEN** is a natural person who resides at 7700B Stenton Avenue, Apartment 105, in the City and County of Philadelphia in the Commonwealth of Pennsylvania.  In this Complaint, Theodore Menten is sometimes referred to as "**MENTEN**".

## JURISDICTION AND VENUE

17.     This action arises under the Copyright Act of 1976, as amended, 17 U.S.C. §§ 101, *et seq.* ("Copyright Act"); The Berne Convention Implementation Act of 1988; The Lanham Act; and other relevant laws.

18.     Plaintiff respectfully submits that this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction); and 28 U.S.C. § 1332(a)(2) (diversity jurisdiction).

19.     Venue is properly lain in this District pursuant to 28 U.S.C. §§ 1391(b) because Defendant **DOVER** is resident in Nassau County in this District and because upon information and belief a substantial part of the events or omissions giving rise to the claims occurred in Nassau County within this District.

## FACTUAL ALLEGATIONS

20.     As described fully below, the Defendants have directly and upon information and belief knowingly and intentionally exploited the copyrights and other intellectual property rights of the Plaintiff for their own financial benefit and in violation of New York and federal law.  After exhausting all efforts to resolve this matter amicably with Defendant Dover the Plaintiff is left with no choice but to file this suit to protect their intellectual property rights.

I.      <u>Authorship and Publication in the United Kingdom</u>

21.     In 1983, a young U.K. artist, Irene Patricia Scott, came up with the vision for a collection of bears based on berries – to be known as "The Teddy Bearys."

22.     Ms. Scott recalls and has contemporaneous written documentation that The Teddy Beary was authored with nonfunctional features intentionally added so as to be part of a toy and graphical art collection, which included but were not limited to:

- Large and padded feet;

- Fat tummy;

- Side-set Ears;

- An oversized bow;

- A half-smile;

- Sloping eyebrows;

- Full cheeks;

- Floppy head;

- Tuft of fur on head;

- Front paws obscured;

- Unique and distinct nose;

- Unique and distinct eyes; and

- Unique and distinct ears with artist's monogram.

23.     A true and accurate copy of the original version of The Teddy Beary as authored in 1983 is annexed hereto and made a part of this Complaint as **Exhibit D**.  The copy includes an undated stamp and signature from a local solicitor where he certifies that the document is a true and complete copy of the original.

II.  **Plaintiff's Submission of the Artwork to Publishers and London and Evidence of Defendant's Actionable Copying**

24.  As an ambitious young British artist with a strong teddy bear design and concept, Ms. Scott prepared a portfolio of her work and shoe-leathered her way around London to present her ideas to various toy makers and publishers.

25.  Among the presentations that Ms. Scott specifically remembers making (and for which she has contemporaneous documentation) was a presentation of "Pudgy Picnic Bears" (which included The Teddy Beary) to representatives of Disney at their offices on Caroline Street in London.  This presentation took place sometime during 1983 or 1984, during which she left a copy of her portfolio including photostatic copies of The Teddy Beary with Disney representatives.

26.  Ms. Scott recalls and has contemporaneous documentation that Disney remained interested in her portfolio and remained in touch with her during the 1983 – 1984 timeframe.

27.  At no time did Ms. Scott reach any agreement with Disney to sell, license, or otherwise give permission for them to use her portfolio or ideas.

28.  Ms. Scott further recalls and has contemporaneous documentation that she made preparations for a meeting to present her portfolio to the London representatives of the Hasbro toy company.  Upon information and belief, Ms. Scott met with representatives of Hasbro at their London office some time in 1983 or 1984 and left them a copy of her portfolio which included photostatic copies of The Teddy Beary.

29.  At no time did Ms. Scott reach any agreement with Hasbro to sell, license, or otherwise give permission for them to use her portfolio or ideas.

30.     At no time did Ms. Scott reach any agreement with any other toy company to sell, license, or otherwise give permission for them to use her portfolio or ideas.

31.     Ms. Scott remembers and has contemporaneous documentation that she presented her ideas at the London offices of the book publishers "Blackie" and "Ladybird" and left them copies of her portfolio which included photostatic copies The Teddy Beary.

32.     At no time did Ms. Scott reach any agreement with Blackie, Ladybird, or any other publishing company to sell, license, or otherwise give permission for them to use her portfolio or ideas.

33.     Upon information and belief, during the time frame when Ms. Scott was presenting her ideas to toy-makers, Disney was co-producing plush toys with Hasbro.  The basis of Plaintiff's information and belief includes but is not limited to online listings on eBay.com and other auction sites which list Disney branded items produced by "Hasbro Softies" and dated 1983 and 1984.  Upon information and belief, the Disney-Hasbro partnership during 1983 – 1984 was common knowledge in the toy industry.

34.     Upon information and belief, during the early 1980s, while Defendant Menten's company was hired by Hasbro Toys to design and style toys, Defendant Menten was commissioned to write a book about Teddy Bears, began writing a Teddy Bear column for DOLLS magazine, and was asked to create Teddy Bear magazine.  The basis of Plaintiff's information and belief with respect to the allegations in this Paragraph is an autobiography believed to be written by Defendant Menten and which is available through the archive.org web service at https://web.archive.org/web/20120925100059/ http://www.kranbearys.com/Ebearz/ Teachers/TedMenten.htm (last visited June 12, 2018).  A

printout of the autobiography is annexed hereto as **Exhibit E** and made a part of this Complaint.

35.     Upon information and belief because of Defendant Menten's retention by Hasbro and his role in the Teddy Bear industry in the early 1980s, Menten had physical access to Ms. Scott's portfolio (or a copy of her portfolio) prior to designing and publishing "Teddy Bear Illustrations" in 1985.   Additionally and/or in the alternative, because of Defendant Menten's role in the Teddy Bear publishing industry, Menten had physical access to Ms. Scott's portfolio (or a copy of her portfolio) prior to designing and publishing "Teddy Bear Illustrations" in 1985.

36.     In 1985, Defendants published "Teddy Bear Illustrations", a copy of the cover and information page of which is below:



Illustration 3.  True and accurate copy of front page of Teddy Bear Illustrations



Illustration 4.  True and accurate copy of information page of Teddy Bear Illustrations

37.     The information page shown above as Illustration 4 says:

"READY•TO•USE

# "TEDDY BEAR
# "ILLUSTRATIONS

"Copyright Free Designs • Printed One Side • Hundreds of Uses

"Designed by **TED MENTEN**

"**Dover Publications, Inc., New York**

"Copyright © 1985 by Ted Menten.
"All rights reserved under Pan American and International Copyright Conventions.

"Published in Canada by General Publishing Company, Ltd., 30 Lesmill Road, Don Mills, Toronto, Ontario

"*Ready-to-Use Teddy Bear Illustrations* is a new work, first published by Dover Publications, Inc., in 1985.

"Dover Clip-Art Series ®

"This book belongs to the Dover Clip Art Series.  You may use the designs and illustrations for graphics and crafts applications, free and without special permissions, provided that you include no more than ten in the same publication or project.  (For permission for additional use, please write to Dover Publications, Inc., 31 East 2nd Street, Mineola, N.Y. 11501)

"However republication or reproduction of any illustration by any other graphic service whether it be in a book or any other design resource is strictly prohibited.

"*International Standard Book Number: 0-486-24943-3*

"Manufactured in the United States of America
"Dover Publications, Inc., 31 East 2nd Street
"Mineola, N.Y. 11501"

38.     Page 15 of Teddy Bear Illustrations is as follows:



Illustration 5.  True and accurate copy of information page of Teddy Bear Illustrations

39.     Upon information and belief, Teddy Bear Illustrations has remained in print by Defendants from 1985 through the filing of this Complaint.

40.     Below is an illustration showing The Teddy Beary and the infringing character illustrated on page 15 of Teddy Bear Illustrations:



Illustration 6.  Comparison of The Teddy Beary (left) and the infringing character (right)

41.     Below is a comparison of The Teddy Beary and the infringing character superimposed on one another.  The original is in red and the infringing character is in black.



Illustration 7.  Superimposition of The Teddy Beary (red) and the infringing character (black)

42.     Among the evidence that the infringing character was not merely "inspired by" or otherwise coincidentally co-created similar to the original was the author's placement of her monogram in the character.  Plaintiff has contemporaneous documentation the artist intended to and actually placed her initials (T.S. – for Trisha Scott) in the ear of The Teddy Beary which would only be visible when the figure is inverted and reversed as shown below.  This monogram appears in the infringing character.



Illustration 8.   Placement of the Monogram shown on The Teddy Beary (left) and the infringing character (right)



Illustration 9.  Monogram (T.S.) visible when ear is inverted and reversed shown on The Teddy Beary (left) and the infringing character (right)

III.   **Plaintiff's Discovery of Defendants' Infringement
        and Broad Contributory Infringement**

43.     In June 2015, Ms. Scott was working with a colleague on a children's picture book with a "Teddy Bears Picnic" theme.

44.     On or about **June 14, 2015**, Ms. Scott searched "Teddy Bears Picnic" on Google to ensure that her draft ideas did not conflict with existing "Teddy Bears Picnic".  It was then – on June 14, 2015 –  that she first saw her 30+ year old The Teddy Beary image on the municipal website of Thunder Bay, California.

45.     Without realizing the extent to which The Teddy Beary had become an internet icon, over the summer of 2015 Ms. Scott contacted a few websites which contained the infringing image and tried to research the source of the infringement.

46.     On or about **October 7, 2015**, Ms. Scott learned that the infringing image were part of the "Dover Collection" of clipart that was sold by Defendant **DOVER**.

47.     Ms. Scott has since learned that the infringing image has been widely distributed by Defendants, parties purportedly licensed by Defendant **DOVER**, and others for commercial use as graphics, clipart, fonts, and purposes.  One download source identified by Plaintiff claims that the infringing image was digitally downloaded not less than 304,582 times (as of April 1, 2018).

48.     After incorporating a holding company for the copyright in Autumn 2017, Ms. Scott obtained a Certificate of Registration for The Teddy Beary under Registration Number VA 2-081-043 effective as of December 8, 2017.  A copy of the Certificate of Registration is annexed hereto as **Exhibit F** and made a part of this Complaint.

**IV.    Defendants Knowledge of their Infringement**

49.    Upon information and belief, the Defendants had and/or should have had knowledge of Ms. Scott's ownership of the copyright in The Teddy Bearys when Teddy Bears Illustrations when they published the book in 1985.

50.    From October 21, 2015 through December 22, 2015, Ms. Scott engaged in good faith negotiations with Defendant **DOVER** via e-mail during which she notified Dover of the infringement and factually demonstrated the copyright violations committed by Defendants. On or about December 22, 2015, communication broke down and the parties have not spoken since.

<u>First Cause of Action</u>
**Copyright Infringement from 1985 through the Present**

51.    Plaintiff repeats and re-alleges the allegations of paragraphs 1 – 50 as if fully set forth herein.

52.    Both the United States and the United Kingdom are part of the union of countries that have joined in the Berne Convention for the Protection of Literary and Artistic Works of September 9, 1886, as amended (the "Berne Convention").  The Berne Convention provides copyright protection to authors of literary and artistic works and this protection applies in all member countries of the Berne Convention.

53.    The Berne Convention provides that the authors of works are entitled to copyright protection under the laws of the country of origin together with the laws of the country where protection is claimed.

54.     The author published The Teddy Bearys on or about 1983 in the United Kingdom.

55.     Publication occurred via, among other things, submission of The Teddy Bearys artwork to various United Kingdom toy makers for consideration.

56.     On or about Winter 2017, the author transferred her rights in the copyright to Teddy Bearys Ltd.

57.     The copyright was exempt from registration in the United States because it was not a "United States work" because, among other things: (i.) it was first published outside of the United States; (ii.) it was not published simultaneously in the United States and another treaty party; and (iii.) the author of the work is not headquartered in the United States.

58.     The Defendants have infringed the Plaintiff's copyright from 1985 and continuing to the present by publishing the infringing image in books, online and through other media.

59.     Defendants factually copied The Teddy Beary as evidenced by the allegations that Defendant Menten had physical access to the copyrighted work prior to the publication of Teddy Bear Illustration; and the two works are strikingly similar to one another.

60.     Upon information and belief, Defendants' gross revenue and profits attributable to its infringement of The Teddy Beary copyright is significant, the exact amount of which will be determined at Trial.

61.     The Plaintiff has suffered damages in an amount to be determined at trial.

## Second Cause of Action
**Copyright Infringement from December 8, 2017 through the Present**

62.     Plaintiff repeats and re-alleges the allegations of paragraphs 1 – 61 as if fully set forth herein.

63.     The Copyright Office granted registration of The Teddy Bearys effective as of December 8, 2017 and granted registration Number VA 2-081-043.  A true and accurate copy of the Registration Certificate from the Copyright Office is annexed hereto as Exhibit E and made a part of this Complaint.

64.     The Defendants infringed the Plaintiff's copyright from December 8, 2017, and continuing to the present by publishing the infringing image in books, online and other media after having been provided with notice by Ms. Scott of the copyright issue.

65.     Upon information and belief, Defendants' gross revenue and profits attributable to its infringement of The Teddy Beary copyright is significant, the exact amount of which will be determined at Trial.

66.     The Plaintiff has suffered damages in an amount to be determined at trial.


## Third Cause of Action
**Contributory Infringement**

67.     Plaintiff repeats and re-alleges the allegations of paragraphs 1 – 66 as if fully set forth herein.

68.     In Teddy Bear Illustrations, the Defendants told readers that:

"You may use the designs and illustrations for graphics and crafts applications, free and without special permissions, provided that you include no more than ten in the same publication or project."

69.     Defendants had actual knowledge that readers and customers would infringe Plaintiff's copyright.

70.     Third Parties did in fact infringe the Plaintiff's copyright.

71.     Defendants materially contributed to the infringement activity by telling its' readers and customers "You may use the designs and illustrations . . . free and without special permissions".

72.     Upon information and belief, Defendants' gross revenue and profits attributable to its contributory infringement of The Teddy Beary copyright is significant, the exact amount of which will be determined at Trial.

73.     The Plaintiff has suffered damages in an amount to be determined at trial.

**Fourth Cause of Action**
**False Designation of Origin Under Lanham Act, 15 U.S.C. § 1125(a)(1)(B)**

74.     Plaintiff repeats and re-alleges the allegations of paragraphs 1 – 73 as if fully set forth herein.

75.     Defendants falsely claimed that The Teddy Beary was "© 1985 Ted Menten".

76.     The false designation of origin created (and continues to create) a likelihood of confusion among the consuming public because they wrongfully believe that The Teddy Beary was not authored by Ms. Scott.

77.      If an injunction is not granted the Plaintiff will continue to suffer irreparable harm.

78.     The Plaintiff has suffered damages in an amount to be determined at trial.

**WHEREFORE**, Plaintiff respectfully prays for a judgment by this Court for the following:

A.    Preliminarily and permanently restraining Defendants, their employees, agents and representatives, and all persons acting in concert or in participation with them, from using on or in connection with any business, service, or the sale, offering for sale, distribution, advertising, promotion, labeling or packaging, of any services or any goods, or from using for any commercial purpose whatsoever The Teddy Beary copyright;

B.    Requiring Defendants to deliver up to the Court for destruction, or to show proof (upon the oath of Defendants made subject to penalty of perjury) of said destruction, any and all items which bear or depict in any manner The Teddy Beary copyright or any colorable imitation thereof;

C.    Directing Defendants to recall from any and all channels of distribution any products bearing any matter or materials in violation of any injunction entered herein or bearing or depicting in any manner The Teddy Beary copyright.;

D.    Awarding to Plaintiff its actual, compensatory, consequential, and incidental damages, in an as yet undetermined amount, resulting from the acts of Defendants complained of herein, including statutory fees and legal fees to the extent permitted by law;

E.    Awarding Plaintiff prejudgment, moratory and post-judgment interest on any monetary award according to the maximum allowable legal rate; and

award according to the maximum allowable legal rate; and

F.      Awarding Plaintiff such other and further relief as this Court may deem just

and proper.


**PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY**

Dated this 13th day of June, 2018

Baruch S. Gottesman, Esq.
185-12 Union Turnpike
Fresh Meadows, NY 11366
*Plaintiff's Counsel*